ROSENN, Circuit Judge.
This appeal presents the issue of whether, when entitlement to qualified immunity depends on a disputed issue of fact, it is proper to submit that question to a jury. Plaintiff Armenio T. Monteiro filed an action under 42 U.S.C. § 1983 against defendant Patricia Perkins-Auguste, alleging that when he was a member of the Elizabeth, New Jersey City Council, Perkins-Auguste, then President of the Council, violated his First Amendment rights by ejecting him from a public meeting of the Council and having him arrested on a disorderly persons charge on the basis of his viewpoint. Perkins-Auguste asserted that she was entitled to qualified immunity and moved for summary judgment on that ground.
Her motion for summary judgment was denied on the basis that whether she was entitled to qualified immunity depended on a disputed issue of material fact-whether she had Monteiro ejected from the meeting on the basis of viewpoint. The District Court submitted the disputed factual question to the jury, which returned a verdict for the plaintiff, Monteiro, awarding him $10,000 in compensatory damages. The jury also awarded Monteiro $750 in punitive damages, finding that Perkins-Au-guste had acted recklessly and with callous indifference to Monteiro’s rights.
Perkins-Auguste moved for judgment as a matter of law following the jury verdict under Fed.R.Civ.P. 50, or in the alternative, for a new trial under Fed.R.Civ.P. 59. The District Court denied her motion and entered judgment in favor of Monteiro. She timely appealed. We affirm the judgment because we find no error in the proceedings. The jury’s verdict is based on sufficient evidence.
I.
Perkins-Auguste challenges the denial of judgment as a matter of law,[1] the *400 submission of punitive damages to the jury, and the admission of two items of evidence. Perkins-Auguste argues that the District Court erred in denying her motion for judgment as a matter of law on the grounds of qualified immunity because a reasonable official in her position would not have understood that ejecting Montei-ro from the meeting violated his First Amendment rights. She further argues that the District Court erred in submitting the question of punitive damages to the jury because Monteiro had presented no evidence that she acted intentionally or deliberately to violate his constitutional rights. Perkins-Auguste also argues that it was substantial error for the District Court to admit evidence of Monteiro’s acquittal, in municipal court, of the disorderly persons charge, and a City Legal Department Memorandum of Law outlining the procedures to be followed by a Council President in ejecting an unruly member.
II.
On April 10, 2001, the Elizabeth City Council convened for the purpose of considering the City’s proposed annual budget. Perkins-Auguste was, at that time, President of the Council and the officer in charge of presiding over the meeting. The meeting was unusually well-attended, with approximately 300 members of the community in the audience. The meeting was taped and broadcast by a local cable station. The members of the Council spoke in turn about their views on the proposed budget.
Monteiro expressed at length his strong objections to the budget, exercising his constitutional right to petition the government on behalf of himself and his constituents. After some discussion from other councilpersons, Perkins-Auguste began to speak. Rather than address the merits of the budget, however, she immediately leveled a pointed attack at Monteiro for what she perceived to be his role in the distribution of a pamphlet protesting the budget and inviting citizens to attend the meeting. The tape reveals that Perkins-Auguste turned toward Monteiro, held up a copy of the pamphlet and stated:
I just want to say, this is deception, what was found in the Council chambers. When you tell residents to come up to City Council because they’re going to be charged additionally 600 and 800 dollars for owning a home in the City of Elizabeth, this is deception, Councilman Monteiro, with your name on it.
Monteiro interrupted her: ‘You’re bringing up my name. You can’t bring up my name and then sit there and ....” he began. Perkins-Auguste swiftly ruled him out of order, pounding her gavel. Montei-ro continued to try to defend himself, and Perkins-Auguste continued to pound her *401 gavel. Perkins-Auguste then asked two municipal officers, who were acting as sergeants-at-arms, to remove Monteiro from the meeting.
As the officers approached Monteiro, Perkins-Auguste continued her remarks:
As I was stating, this is deception, when Council members put this type of propaganda throughout the community, when you state there’s a 600, an 800 dollar tax increase. My taxes, I own a home in this city, my taxes over the last two and three years only went up twenty-five, thirty dollars for the entire year. So I don’t know where you guys are coming off with a thousand dollars, 600 dollars, 800 dollars tax increase. Get the facts straight. If you don’t want to vote for the budget, don’t vote for the budget, but do not lie to the general population. This is disgusting. If you want people to come to the meeting, you tell them to come up because there’s something that they need to learn. Do not lie. It’s beyond deception.
Monteiro then said: “Well, we’ll wait for the bills to come out.” In response, Perkins-Auguste exclaimed: “This man cannot keep his mouth shut,” and once again asked that he be removed. Monteiro responded that he would not voluntarily leave the meeting, and that, if she wished to have him removed, she would have to have him arrested. As the officers asked Monteiro to step out from his seat, one member of the Council advised that they should “ask for a legal opinion on this,” and that “there are rules and regulations in our code that we can adopt right now.” Perkins-Auguste did not appear to consult or follow any established procedure in ejecting Monteiro. The evidence introduced at trial reveals that there were at least two possible procedures available to her under the City Council’s governing rules. The rules required that the Council vote on the matter of a councilperson’s removal.[2] No vote was taken. Monteiro was advised by a City Attorney that he was required to abide by the orders of the Council President, to which he responded, “I apologize, I understand that.” Soon thereafter, Perkins-Auguste called a five-minute recess.
When the Council reconvened, Monteiro was still sitting in his Council chair. Perkins-Auguste immediately asked the officers to escort Monteiro out of the meeting. They replied that they could not do so unless he was formally placed under arrest. After some vacillation, Perkins-Au-guste agreed. She instructed the officers to place Monteiro under arrest and remove him from the meeting. The officers handcuffed Monteiro and led him from the meeting. Perkins-Auguste then proceeded to speak at length to the audience regarding her actions:
*402 He filibustered for over twenty-five minutes. Not one Council member opened their mouths. As soon as I speak and others speak, he thinks he can just talk. That is not how this Council will run meetings. It was disgraceful, and I would not put my Council colleagues in it in terms of having them vote on it. That’s a decision the President must make, and I am saddened by it, because I believe in free speech and I believe in representation.
She then raised a copy of the offending pamphlet and continued her quasi-prosecu-torial attack in a more aggressive tone:
But when you have Council people who allow this type of propaganda to go out with them name on it to lure City residents up into Council meetings, it’s a disgrace also. I own a home in this City, and for over the last four years, taxes have not gone up no more than three percent, if any, in any of those given years. Twenty-five dollars here, maybe seventy or fifty dollars here, nothing more. We all hate to raise taxes, but it’s something you have to do if you are an elected municipal official. Taxes is just a part of the nasty job. Taxes is a nasty word, but we must realize, it’s a reality in the United States of America. And again, I apologize to every resident in the City of Elizabeth who witnesses this tonight or tomorrow or whenever you see this on TV. We are trying to conduct the City business.... Our chief role as Council representatives is to allocate funds to run the City, to investigate, and to appropriate. And if we cannot do that in a decent, orderly manner and respect one another’s positions, then we’re just all for waste.
Again, my colleagues, I apologize to you, but he left me with no decision but to have him to be removed. Constantly interrupting throughout the entire meeting, constant warnings. I have a two- and-a-half year old, and I was talking to him like my child, stop, stop. You’re going to get it, stop. You’re going to be thrown out of here, stop. There comes a point in time when you must act, and again, I apologize to all those who witnessed this, you in the audience, I apologize but he left me no other choice. I cannot allow my colleagues to overrun the meetings just to make a point.
And I was so upset when I saw this [pamphlet] out in the pews to get people to come up to the meeting, 600, 800 dollars. That is not how you get people to be informed. This is scare tactics. His name is on it, he allowed it.
As a result of his removal from the meeting, Monteiro was deprived of his opportunity to vote on the budget. He was also charged with disruption of a public meeting in violation of New Jersey law, but subsequently found not guilty of the offense in municipal court.[3]
Monteiro filed a civil suit against the City of Elizabeth, the police officers who removed him from the City Council Meeting, and Perkins-Auguste in her capacity as President of the City Council. He asserted various state law claims and claims under 42 U.S.C. § 1983 for violations of his First Amendment, Fourth Amendment, and due process rights. Monteiro’s claims against the City and the police officers were disposed of by voluntary dismissal and on summary judgment, as were most of his claims against Perkins-Auguste. *403 The District Court denied Perkins-Au-guste’s motion for summary judgment on Monteiro’s claim under § 1983 for violation of his First Amendment rights.
Perkins-Auguste argued in her motion for summary judgment that she was entitled to qualified immunity on Monteiro’s First Amendment claim. The District Court disagreed, however, finding that whether she was entitled to qualified immunity depended on the disputed question of her motivation for ejecting Monteiro from the meeting. The District Court held that the First Amendment protected Monteiro’s right to speak on public issues at a public meeting and from adverse actions taken by officials presiding over the meetings. The District Court found that the council meeting was a limited public forum, subject to reasonable time, place, manner restrictions on speech. The District Court noted that in order to satisfy the First Amendment, time, place, manner restrictions must be viewpoint-neutral, narrowly tailored to serve a significant governmental interest, and must leave open ample alternative channels for communication.
The District Court found that provisions of the City of Elizabeth’s Rules of Procedure forbade Council members from delaying or interrupting proceedings and allowed the presiding officer to bar unruly members “except that if the speaker shall submit to proper order under these rules, permission for him to continue may be granted by a majority vote of the Council.” The District Court held that these provisions were facially valid time, place, manner restrictions because they were viewpoint-neutral, narrowly tailored to serve the significant governmental interest in conducting orderly and efficient meetings of a public bodies, and left open ample alternative channels of communication. But the District Court concluded that the factual record raised a disputed question of fact whether Monteiro was silenced by Perkins-Auguste based on his views on the budget or her need to maintain order:
[A] fact finder hearing the history between the parties, the words that were actually said at the meeting, and viewing Plaintiffs conduct as shown in the videotape, could reasonably conclude that the Plaintiff was not being disruptive and that Ms. Perkins-Auguste’s actions were motivated by her antipathy to Plaintiffs particular outspoken views on the budget and his alleged sponsorship of the “offensive” flier that attacked the city’s budgetary proposals. Indeed, prior to the event, Defendant was aware of Plaintiffs view and knew that he was going to vote and argue against the budget. Therefore, material questions of fact exist as to whether Defendant’s motive for acting against Monteiro resulted from the content of his speech (constitutionally impermissible) or was an appropriately-limited time, place and manner restriction (constitutionally permissible). A rational jury could infer that Defendant Perkins-Auguste singled Plaintiff out because of the content of his speech, or that she was merely trying to maintain order for the efficient administration of her legislative responsibilities.
Monteiro v. City of Elizabeth, No. 01-1844, at 22-23 (D.N.J. Nov. 12, 2003). The District Court further concluded that the availability of qualified immunity depended on this disputed issue of fact:
If Ms. Perkins-Auguste’s motivation in removing Mr. Monteiro was her animosity towards him and the desire to stifle his view on the budget, then Ms. Perkins-Auguste as a reasonable public official would have known that her specific conduct violated the Plaintiffs clearly established rights and was not subject to qualified immunity. See Anderson v. *404 Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In as much as these questions must be resolved by a trier of fact and determined perhaps through the use of a specifically-tailored jury verdict questionnaire, it would be improper to determine this matter via summary judgment.
Id. Accordingly, the District Court concluded that the question of Perkins-Au-guste’s motivation in ejecting Monteiro from the meeting was a disputed issue of material fact for the jury to decide, precluding summary judgment on Monteiro’s First Amendment claim against Perkins-Auguste.
III.
We review a denial of judgment as a matter of law de novo, viewing the evidence in the light most favorable to the prevailing party. Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir.2005). Judgnent as a matter of law is only appropriate if “there is no legally sufficient evi-dentiary basis for a reasonable jury to find for [the moving] party on that issue.” Fed.R.Civ.P. 50(a)(1).
The doctrine of qualified immunity protects government officials from civil damage suits for official conduct that does not violate clearly established law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity “ ‘gives ample room for mistaken judgments’ by protecting ‘all but the plainly incompetent or those who knowingly violate the law.’ ” Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).
It is clearly established that when a public official excludes a elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment. See, e.g., Eichenlaub v. Twp. of Ind., 385 F.3d 274, 281 (3d Cir.2004) (applying public forum analysis to township official’s curtailing of allegedly disruptive speech at a public meeting); Collinson v. Gott, 895 F.2d 994, 995, 999 (4th Cir.1990) (removal of citizen from public meeting of county commissioners for interruptions and truculence); Jones v. Heyman, 888 F.2d 1328, 1329 (11th Cir.1989) (mayor’s silencing and removal of citizen from public meeting for disruptive behavior); Musso v. Hourigan, 836 F.2d 736, 739 (2d Cir.1988) (school board’s removal of citizen from public meeting for disruptive behavior). It is also clearly established that content-based restrictions on speech in a public forum are subject to strict scrutiny, while viewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest. See, e.g., Good News v. Milford Cent. Sch., 533 U.S. 98, 106-107, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001); Rosenberger v. Rector & Visitors of Univ. Of Va., 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); Lamb’s Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 392-393, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993).
Thus, if Perkins-Auguste acted with an intent to suppress Monteiro’s speech on the basis of viewpoint, she violated clearly established law and is not entitled to qualified immunity. In cases in which a constitutional violation depends on evidence of a specific intent, “it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.” Locurto v. Safir, 264 F.3d 154, 169 (2d Cir.2001). Accordingly, the District Court did not err in holding that whether Perkins-Auguste’s conduct violated clearly established law depended upon her moti *405 vation for ejecting Monteiro from the meeting. Furthermore, it was not error to submit this question to the jury because there was sufficient evidence from which a reasonable jury could conclude that Perkins-Auguste acted with a motive to suppress Monteiro’s viewpoint.
 Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury. See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) (“While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.”). Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor. See Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact); Walker v. Horn, 286 F.3d 705, 710 (3d Cir.2002).
Monteiro adduced sufficient evidence at trial from which a reasonable jury could conclude that Perkins-Auguste acted with a motive to suppress Monteiro’s speech based upon his opposition to the budget. The jury saw the videotape of the meeting and heard the stridency of Perkins-Auguste’s ad hominem attack on Monteiro. While Monteiro was arguably disrupting the proceedings by interrupting her, he was also defending himself from a personal attack.[4] It was Perkins-Auguste who changed the tone of the meeting from a debate about the merits of the budget to a quasi-prosecutorial forum.
Monteiro reminded Perkins-Auguste that his constitutional rights were at stake, stating: “I am not leaving Madam President. It’s a violation of my civil rights. It’s a violation of my First Amendment rights.” Perkins-Auguste demonstrated her own awareness when she apologized to the audience for ejecting him: “I am saddened by [the ejection], because I believe in free speech and I believe in representation.” She admitted at trial to having knowledge of a law memorandum of the City of Elizabeth Legal Department setting forth a procedure for ejecting unruly members. See supra note 2. The speed with which she determined to eject Mon-teiro from the meeting, her failure to consult her fellow council members or to negotiate any compromise, and her failure to follow any established procedure could be viewed by a reasonable jury as evidence that Perkins-Auguste’s behavior was emotionally charged and motivated by anger and personal animosity, rather than a desire to maintain smooth operation of the meeting. Despite the calm in the meeting room after the recess, Perkins-Auguste persisted in having Monteiro removed, in handcuffs, against his will.
Perkins-Auguste’s argument that she could have conceivably (and constitutionally) ejected Monteiro on the basis of his disruptions is unavailing in the face of a jury verdict concluding that she acted with a motive to suppress Monteiro’s speech on the basis of viewpoint. Qualified immunity does not require a plaintiff to demonstrate that the official’s conduct was not reasonable under any conceivable set of circumstances. See Crawford-El v. Britton, 523 U.S. 574, 593-594, 118 S.Ct. *406 1584, 140 L.Ed.2d 759 (1998) (“[T]he policy concerns underlying Harlow do not support Justice Scalia’s unprecedented proposal to immunize all officials whose conduct is ‘objectively valid,’ regardless of improper intent.”); see also Locurto, 264 F.3d at 169-170. When a constitutional violation depends on evidence of improper intent, it is sufficient for the plaintiff to “identify affirmative evidence from which a jury could find ... the pertinent motive,” in order to survive summary judgment on that issue. Crawford-El, 523 U.S. at 600, 118 S.Ct. 1584. After the jury returns a verdict, judgment as a matter of law will be granted to the defendant only if that verdict is not based on sufficient evidence. Fed.R.Civ.P. 50(a)(1).
In conclusion, the District Court did not err in denying Perkins-Auguste’s motion for judgment as a matter of law. In its opinion denying the motion, the District Court noted that the jury found that the Defendant had an unconstitutional motivation for ejecting Plaintiff from the City Council meeting, thereby violating Plaintiffs rights under the First Amendment. Upon reviewing the evidence in the light most favorable to the Plaintiff, the District Court-found that sufficient evidence existed to support the jury verdict. We see no error by the District Court.
IV.
Perkins-Auguste also complains that the District Court committed substantial error in admitting evidence of Monteiro’s acquittal in municipal court of the disorderly persons charge and a memorandum of law from the City Law Department pertaining to the procedure to be followed in ejecting an unruly member of City Council. We review evidentiary rulings for abuse of discretion. Abrams v. Lightolier, 50 F.3d 1204, 1213 (3d Cir.1995). The District Court rejected these objections when it denied Perkins-Auguste’s motion for a new trial. The District Court admitted the evidence of Monteiro’s acquittal in the municipal court as evidence of damages because the bulk of Monteiro’s $10,000 damage award was a $5,000 claim for attorney’s fees he incurred defending himself. The District Court provided a special comprehensive instruction balancing the interests of both parties. The import of the acquittal, the court noted, was narrowly confined by the instruction. As for the memorandum of the City’s attorney’s, the District Court wrote:
The memo set forth a legal opinion which provided specific instructions on the proper course of action in case a Council member became unruly. Perkins-Auguste admitted to having knowledge of the existence of this memo prior to the Council meeting in dispute and admitted that she did not heed that advice in that memorandum.
Monteiro v. City of Elizabeth, No. 01-1844, at 10 (D.N.J. Sept. 1, 2004). The court concluded that the memorandum provided highly probative circumstantial evidence that the ejection of the Plaintiff was not based solely on his alleged disruption “but was motivated by the content of his speech.” We agree and hold that the District Court did not abuse its discretion in admitting these two items of evidence. Abrams, 50 F.3d at 1213 (3d Cir.1995).
The District Court also rejected Perkins-Auguste’s claim that it erred in submitting the question of punitive damages to the jury. We see no error with respect to the $750 punitive damages award. “Whether there is sufficient evidence to support punitive damages is a question of law which we review de novo.” Alexander v. Riga, 208 F.3d 419, 430 (3d Cir.2000). The evidence outlined above amply supports the jury’s conclusion that Perkins-Auguste acted recklessly and with *407 callous indifference to Plaintiffs rights in having him removed from the meeting. Therefore, the punitive damages award will not be vacated.
Y.
For the foregoing reasons, the judgment of the District Court is affirmed. Costs taxed against appellant.

. Perkins-Auguste styles her appeal as an appeal of the District Court’s denials of her motion for summary judgment before trial, her motion for judgment as a matter of law after the close of the plaintiff's case, and her motion for judgment as a matter of law following the adverse jury verdict. We note that it is not clear what rights, if any, Perkins- *400 Auguste retained to challenge the legal determinations the trial judge made at summary judgment, which she did not appeal. If she retained a right to raise a legal question, was that right limited to legal errors made at trial and the sufficiency of the evidence to support the jury's verdict? Or did it continue to extend to the legal questions twice raised in the motions for summary judgment and certification under 28 U.S.C. § 1292ft)), and twice decided adversely to the Defendant? The Supreme Court has strongly urged that the legal question of qualified immunity be decided before trial in order to preserve its protections. Saucier v. Katz, 533 U.S. 194, 200-201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Mitchell v. Forsyth, 472 U.S. 511, 525-526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Qualified immunity is " 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.’ ” Saucier, 533 U.S. at 200-201, 121 S.Ct. 2151 (quoting Mitchell, 472 U.S. at 526, 105 S.Ct. 2806). We treat her appeal as an appeal of her motion for judgment as a matter of law.

. A legal memorandum of the City Law Department, dated September 26, 2000, less than a year before the April 10, 2001 meeting, states: "The Rules of Procedure do not provide a specific remedy available to the City Council President if a member fails to comply with the orders of the President after being ruled out of order repeatedly.” The memorandum notes, however, that the City Rules incorporate Robert’s Rules of Order, which provide the authority to eject an unruly member. The memorandum concludes: "Therefore, it is our opinion that if a member of the City Council repeatedly refuses to comply with the orders and rulings of the President, the member ... may be ejected ... by vote of a majority of those Council members present and voting.” In addition, the Rules provide that ”[a]ny person who shall disturb the peace of the Council, make impertinent or slanderous remarks or conduct himself in a boisterous manner while addressing the Council shall be forthwith barred by the presiding officer from further audience before the Council, except that if the speaker shall submit to proper order under these rules, permission for him to continue may be granted by a majority vote of the Council.”

. The offense of "disrupting meetings and processions” is defined as follows:
A person commits a disorderly persons offense if, with purpose to prevent or disrupt a lawful meeting, procession or gathering, he does an act tending to obstruct or interfere with it physically.
N.J. Stat. Ann. § 2C:33-8.

. Recall the words of lago in Othello: "Who steals my purse steals trash.... But he that filches from me my good name / Robs me of that which not enriches him, / And makes me poor indeed.” William Shakespeare, Othello (3.3.1807-1811).