SLOVITER, Circuit Judge,
dissenting.
My colleagues have presented a learned exegesis on First Amendment law which, if raised in a pretrial context, may well carry the day. I differ because they fail (in my opinion) to give sufficient weight to yet another constitutional imperative — that grounded in the Seventh Amendment which requires judges to give higher weight to a jury’s interpretation of the facts than to their own predilections.
In this case, they affirm the District Court’s bold step overturning the jury’s verdict for allegedly insufficient evidence. I respectfully dissent. Drawing all reasonable inferences in favor of the nonmoving party, as is required, I believe the evidence was sufficient to support the jury’s conclusion that Fiore Leone, the chairman of the Erie County Council, was motivated more by the content of Daniel Galena’s speech and/or his identity than by a desire to enforce a reasonable regulation. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-50, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
Although Galena may have been speaking out of turn when he objected to the March 20, 2007 proceedings as violating the Pennsylvania Sunshine Act, it is undisputed that Leone’s reaction was extremely angry, indeed disproportionately so. Meanwhile, Galena remained calm throughout. Even the police officer who escorted Galena from the meeting testified that Leone was “pretty animated ... pounding the gavel,” while Galena was “pretty calm throughout the whole ordeal.” App. at 56. Another councilmember described the exchange as “boisterous,” but said that Galena was not insulting, threatening, insolent, slanderous, or obscene. Finally, Galena testified that Leone re *214 sponded in a “loud, angry tone.” App. at 38. Although a jury would not be required to credit Galena’s testimony, it certainly was entitled to. Even if the jury chose to ignore Galena’s testimony, the other testimony was consistent that Leone reacted in a loud, angry manner to Galena’s untimely objection. The videotape of the exchange, which was played for the jury, supports that testimony. Leone’s disproportionate reaction gives rise to an inference that it was precipitated by something other than Galena’s miscue.
This conclusion is supported by our precedent. In Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir.2006), we held that the District Court properly denied judgment as a matter of law when the defendant presiding officer removed another councilperson from a meeting. In that case, as here, the plaintiff councilperson was interrupting the presiding officer and there was a valid time, place, and manner speech restriction in effect. Id. at 403-05. Notwithstanding, because the presiding officer responded in an emotionally charged, angry way and with personal attacks against the other councilperson, we held that a reasonable jury could find that the officer was motivated by the plaintiffs speech or identity, not by a desire to enforce the otherwise valid regulation. Id. at 405. We also held that “[t]he speed with which [the presiding officer] determined to eject [the plaintiff] from the meeting ... could be viewed by a reasonable jury as evidence” that the officer was motivated by content and personal animosity, rather than a desire to maintain decorum. Id.
Though the evidence of the presiding officer’s ill-motive was perhaps stronger in Monteiro than it is here, Monteiro reinforces that the jury was entitled to infer from Leone’s anger and the speed with which he silenced Galena that he was impermissibly motivated. Despite the factual similarity between Monteiro and this case, the majority does not persuasively distinguish its outcome.
So swift was Leone’s retribution that Galena was hardly able to articulate the substance of his objection. The majority characterizes Leone’s immediate sanction as evidence that the content of the speech did not motivate Leone. While that is one way to view the evidence, that is certainly not the only way. The jury could have reasonably inferred, as we held in Monteiro, that Leone acted swiftly because he knew, even if not the specific terms, at least the general tenor of Galena’s objection and attempted to preemptively silence him. Such an inference is reasonable given that Galena had been a frequent commentator at meetings, often raising arguments that Leone himself characterized as being criticisms of the council. See App. at 75 (Leone testified that Galena had previously criticized him for acting “illegally], as far as some of the issues were concerned, [Galena] said that a few times when he addressed Council.”). Even were such an inference not reasonable, the First Amendment protects restrictions based on the speaker’s identity; without question Leone knew that Galena was the speaker.
Other evidence also supports the jury’s verdict. For example, as outlined by the majority, after the public hearing portion of the March 20 meeting had concluded, Leone ominously warned three of the citizens who had spoken to be careful when they accused the council of breaking the law and commented “[i]t seems like no matter what, some people cannot be pleased.” App. at 144-45. Leone then warned people to “be careful, because, if necessary, Council will take the matter to court.” App. at 145. This warning appears to be content based — Leone was tired of being accused by constituents of *215 breaking the law and threatened to take them to court if they continued to do so. It is hardly a comment one would expect from a neutral presider.
The jury could have reasonably concluded that when Leone silenced Galena, Leone was grouping him with the other constituents whom he had first threatened. The jury could have viewed Leone’s conduct as motivated by his anticipation that Galena’s speech would be critical of him. As noted, Leone testified that in the past Galena had accused him of acting illegally, the same type of accusation that prompted Leone to issue his warning on March 20, 2007. Indeed, on March 20 Galena was again accusing Leone of acting ultra vires, in contravention of the Pennsylvania Sunshine Law (an objection which, according to the transcript, Galena was barely able to utter before he was ejected). See App. at 148. Additional evidence indicating that Leone was grouping Galena with the other constituents is the fact that as Galena was being escorted out of the room, Leone shouted, asking “Anyone else want to go?” See Galena v. Leone, 711 F.Supp.2d 440, 447 (W.D.Pa.2010). The majority opinion does not discuss this fact.
The fact that Leone threatened Galena with “harassment” charges as he ejected Galena, ostensibly because Galena accused the council of acting illegally, further supports the jury’s conclusion that Leone was motivated by the content of Galena’s speech. At trial, Leone attempted to explain this threat away, testifying that he more or less meant “disorderly conduct.” App. at 110. But the jury was not required to credit that explanation. As the factfinder charged with making credibility determinations, it appears they did not. The Supreme Court has instructed that we are not to second guess such credibility determinations. Reeves, 530 U.S. at 150, 120 S.Ct. 2097.
On that same note, the majority appears to credit Leone’s testimony that he was merely enforcing a provision of the Erie Administrative Code, which he understood to allow public participation only during the public hearing portion of the meeting. However, as outlined above, there are numerous facts — -Leone’s anger, swift response, and content-based threats — from which a jury could have rejected Leone’s testimony and concluded that procedural stewardship was not his motive.
Finally, the majority emphasizes that Galena had spoken at meetings many times in the past, and Leone had, for the most part, allowed him and other persistent objectors to speak. Viewed in this light, this historical relationship is helpful for Leone. But the history reveals another side. Namely, Leone had a track record of reacting negatively towards Galena: scowling, grimacing, and laughing at Galena’s comments. . Notwithstanding Leone’s failure to have silenced Galena in the past, the jury could have inferred from Leone’s past behavior that he had a growing disdain for Galena and his comments. The jury could have concluded that the disdain reached a boiling point at the March 20, 2007 meeting and that Leone silenced Galena because of the content of his speech and/or his identity.
In sum, the jury was entitled to conclude that Leone was motivated impermissibly by Galena’s speech content and/or his identity. We should be hesitant to override the jury’s judgment with our own. I would affirm the jury verdict.