# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10992

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2014

Lyle W. Cayce
Clerk

WAYLON LEE MOORE,

> Plaintiff – Appellant

v.

BRACE CADE HUSE, Individual and Official Capacity; RUSSELL DAVIS, Individual and Official Capacity; CHARLES H. EVANS, Individual and Official Capacity; HENRY D. WINSOR, Individual and Official Capacity; JEREMY NELSON, Individual and Official Capacity; JORGE RODRIGUEZ, Individual and Official Capacity,

> Defendants – Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:12-CV-164

Before KING, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Waylon Lee Moore appeals the district court's grant of summary judgment in favor of Brace Cade Huse, Mayor of the City of Seagraves, and various members of the Seagraves City Council on Moore's First Amendment retaliation claims. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10992

## I.     Factual and Procedural Background

Plaintiff-Appellant Waylon Lee Moore was employed by the City of Seagraves, Texas ("the City") from 2005 to October 15, 2012.  In 2008, Moore was promoted to Public Works Director.  That same year, the City issued Moore a credit card in his name.  At the time Moore received his City-issued credit card, the City lacked a written credit card policy.  There was an unwritten policy that City-issued credit cards could be used for certain authorized purchases.  Credit cards could also be used to pay for meals for employees working late or traveling on official business, as long as these charges were substantiated by receipts.  The mayor at the time, Ovidio Martinez ("Mayor Martinez"), also instructed the credit card holders that if they charged personal expenses to the card, they would be personally responsible for reimbursing the City.

As the Public Works Director, Moore used the Supervisory Control and Data Acquisition system ("SCADA") to monitor the distribution of water and the water pressure for the City.  According to Moore, in March 2012, Mayor Martinez authorized Moore to purchase an iPad for use with the SCADA system.  Moore contends that he was further instructed to use his credit card to pay for a Verizon Wireless data service plan for the iPad.[1]

In addition to serving as Public Works Director, Moore worked at the City's pool as a Certified Pool Operator ("CPO").  In 2010, the City paid for Moore and Manuel Gustavo Martinez ("Gus Martinez") to obtain CPO certifications so that they could run the pool.  As a CPO, Moore worked on weeknights and weekends after performing his full-time duties as Public Works Director.  Moore and Gus Martinez both assert that Mayor Martinez

---

[1] Mayor Martinez testified in a deposition that he did not recall authorizing the iPad purchase or the data plan.

2

No. 13-10992

instructed them to record their time so that they would paid for the CPO work in addition to their normal salary as City employees. Although Moore did not instruct the City secretary, who was responsible for managing the City's payroll, to pay him at any specific rate, he was ultimately paid at his regular rate of $21.50 per hour. Mayor Martinez testified, however, that he informed both Moore and Gus Martinez that they would be paid $8.50 per hour for their CPO work. Mayor Martinez's successor as Seagraves's mayor, Brace Cade Huse ("Mayor Huse"), testified that Mayor Martinez told him that Moore and Guz Martinez were to paid $9.00 or $9.50 per hour for the CPO work.

During the 2012 mayoral campaign, Moore supported former City Councilmember Bob Vuicich in the election against Brace Huse. Moore claims that Huse and the members of the City Council were aware of his support for Vuicich because of Seagraves's small size, Moore's active participation in the campaign, City Councilmembers' attendance at events where Moore voiced his support for Vuicich, and Moore's close personal relationship with Vuicich. Vuicich ultimately lost the mayoral election to Huse.

On August 20, 2012, about ninety days after Huse won the mayoral election, Huse instructed Moore to attend the City Council Executive Session. Also in attendance were Huse, City Councilmembers Russell Davis, Charles Evans, Henry Winsor, Jeremy Nelson, and Jorge Rodriguez, the City Secretary, and the City Attorney. During the Executive Session, Huse asked Moore about several suspect charges to his City-issued credit card, including for RedBox DVD rentals, meals at local restaurants, and Verizon Wireless data charges. Moore apologized for several of the charges and offered to refund the City. In addition, Moore asserts that he "tried to tell Mayor Huse and remind the City Council members that Mayor Martinez instructed me to use my credit card to pay for the . . . data service," but was interrupted before he could do so. Huse also raised the matter of Moore's work as a CPO, and he claimed that

No. 13-10992

Moore should not have been paid for his work at the pool and should have reported his overpayment. At that point, the City Attorney began questioning Moore, and Moore declined to offer any further explanation, stating that he did not want to throw people "under the bus."

Huse recommended that the City Council suspend Moore without pay for thirty days, permanently reduce his salary by ten percent, require Moore to repay the City for unauthorized credit card charges and all wages he received working as a CPO, and bar Moore from City buildings for thirty days. Huse further recommended that, once he returned from his suspension, Moore would not be given additional payment for working as a CPO above his Public Works Directory salary. The City Council voted to approve the recommendations.

After Moore was suspended, the City commissioned an outside accounting firm to review City employees' and officials' use of City-issued credit cards. The accounting firm issued a report detailing its findings on September 4, 2012. The firm found that "[s]everal charges on the public works director's card appeared to be for personal use such as Verizon prepaid data plans and telephone, XM-Sirius radio subscription and video rentals." The firm also noted "instances of proper supporting documentation not being provided for purchases by all employees and elected officials."

On September 12, 2012, Moore filed this lawsuit, alleging that his constitutional rights were violated by the City of Seagraves, Mayor Huse, and City Councilmembers Davis, Evans, Winsor, Nelson, and Rodriguez (collectively "Appellees"). In his Second Amended Complaint, Moore pleaded five causes of action: (1) First Amendment retaliation claims against the individual defendants; (2) Fourteenth Amendment procedural due process claims against the individual defendants and the City; (3) Fair Labor Standards Act claims against the City and Huse; (4) defamation claims against Huse; and (5) a "constructive discharge" claim.

No. 13-10992

Huse and the City were served with Moore's suit on September 13, 2012. On September 17, 2012, immediately prior to a City Council meeting, Davis, Evans, Winsor, Nelson, and Rodriguez were also served. During the City Council meeting, the City Council voted to renew Moore's suspension for an additional thirty days. On October 15, 2012, Moore resigned.

The individual defendants moved, in the district court, for summary judgment based on qualified immunity on Moore's First and Fourteenth Amendment claims, and Huse moved for summary judgment based on official immunity on Moore's state law defamation claim. The district court granted summary judgment on these claims in favor of the Appellees. In this timely filed interlocutory appeal, Moore challenges only the district court's entry of summary judgment on his First Amendment retaliation claims.

## II.    LEGAL STANDARDS

We review a district court's order granting summary judgment on the basis of qualified immunity de novo, applying the same standard as the district court. *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must consider all facts and inferences in the light most favorable to the nonmoving party. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

Qualified immunity shields from suit all but the "plainly incompetent or those who knowingly violate the law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks and citation omitted). When a government official asserts a qualified immunity defense, the burden shifts to the plaintiff to negate qualified immunity. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, —— U.S.

——, ——, 134 S. Ct. 1861, 1865 (2014).  Under the first prong, courts assess "whether the facts, taken in the light most favorable to the party asserting the injury, show the [government actor's] conduct violated a federal right."  *Id.* (internal quotation marks, citation, and brackets omitted).  Under the second prong, courts ask "whether the right in question was 'clearly established' at the time of the violation."  *Id.* at 1866.  Accordingly, "[g]overnmental actors are 'shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  Courts may address these prongs in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).[2]

Moore alleges that Huse and the members of the Seagraves City Council retaliated against him in response to his exercise of his First Amendment

---

[2] We note that the district court (led, perhaps, by the parties' briefing) incorrectly characterized the relevant question under the second prong of the qualified immunity test as "whether it would have been objectively reasonable for a city official to have taken the same adverse employment action against Moore even in the absence of his protected speech."  The second prong of qualified immunity focuses on whether a reasonable official would have known that suspending Moore in response to his protected speech was a violation of established law—not whether a reasonable mayor or city councilmember could have chosen to suspend Moore in light of the evidence presented of Moore's wrongdoing.  *See Crawford-El v. Britton*, 523 U.S. 574, 578 (1998) (holding, in a First Amendment retaliation case, that "[t]he policy concerns underlying *Harlow* [*v. Fitzgerald*, 457 U.S. 800 (1982)] do not support Justice Scalia's unprecedented proposal to immunize all officials whose conduct is 'objectively valid,' regardless of improper intent."); *see also Tompkins v. Vickers*, 26 F.3d 603, 607–08 (5th Cir. 1994) ("Every Circuit that has considered the question has concluded that a public official's motive or intent must be considered in the qualified immunity analysis where unlawful motivation or intent is a critical element of the alleged constitutional violation."); *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("Qualified immunity does not require a plaintiff to demonstrate that the official's conduct was not reasonable under any conceivable set of circumstances."); *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001) ("[W]here a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law."); *Hoard v. Sizemore*, 198 F.3d 205, 219 (6th Cir. 1999) (declining the opportunity "to transform the factual issue of motivation into the legal question of objective reasonableness.").

rights.  The Supreme Court has held that "public employees do not surrender all their First Amendment rights by reason of their employment."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  To establish a First Amendment retaliation claim in the employment context, Moore must show that: "(1) [he] suffered an adverse employment decision, (2) [his] speech involved a matter of public concern, (3) [his] interest in speaking outweighed [the Appellees'] interest in promoting efficiency, and (4) [his] protected speech [substantially] motivated [an adverse employment action]."  *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (internal quotation marks and citation omitted).

In addition, under the Supreme Court's *Mt. Healthy* doctrine, Moore's protected speech must be the "but for" cause of the adverse employment in order to support his retaliation claims under the First Amendment.  *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  This means that, even if Moore satisfies his burden at the fourth step of showing that his speech was a substantial or motivating reason for the adverse employment action, the Appellees may avoid liability if they can show that they "would have fired [Moore] regardless of the protected conduct."  *Jordan v. Ector Cnty.*, 516 F.3d 290, 301 (5th Cir. 2008).  Moore may refute such a showing "by presenting evidence that his employer's ostensible explanation for the discharge is merely pretextual."  *Haverda v. Hays Cnty.*, 723 F.3d 586, 592 (5th Cir. 2013) (internal quotation marks and citation omitted).[3]  Because the Appellees do not dispute

---

[3] We have previously made clear that the burden-shifting framework set out in *Mt. Healthy* for assessing causation for First Amendment retaliation claims is distinct from the *McDonnell Douglas* burden-shifting framework that applies to many other types of discrimination and retaliation claims.  *See Charles v. Grief*, 522 F.3d 508, 516 n.28 (5th Cir. 2008).

the first three steps of the First Amendment retaliation analysis, only causation is at issue in this case.

### III.   FIRST AMENDMENT RETALIATION CLAIMS

The district court granted summary judgment for the Appellees on Moore's claim that the Appellees suspended him at the August 20, 2012 City Council meeting in retaliation for his advocacy for Huse's opponent during the recent mayoral election.  The district court provided two reasons supporting its conclusion that summary judgment was warranted: (1) even if Huse intended to retaliate against Moore, the City Council—and not Huse—was the final decisionmaker responsible for suspending Moore, and (2) the City Council's decision to suspend Moore on August 20, 2012 was justified because the City Council reasonably concluded that Moore had violated the City's credit card policy and had failed to report that he was being overpaid for his position as a CPO.  We reach only the district court's first reason for granting summary judgment.

As the district court correctly noted, "only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983."  *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009) (internal quotation marks and citation omitted).  Ordinarily, motivations of other supervisors and employees cannot be imputed to a final decisionmaker. "Nevertheless, when the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact."  *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002).  "To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions: (1) that a [supervisor or coworker] exhibited [retaliatory intent], and (2) that the same [supervisor or coworker] possessed leverage, or exerted influence, over

the titular decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (internal citations and quotation marks omitted).

Moore acknowledges that the City Council was the final decisionmaker because it alone had the authority to suspend Moore. Although Moore contends that Huse was motivated to retaliate against him because of his support for Huse's political opponent, Moore does not point to any evidence that the City Councilmembers were motivated by animus against Moore. On appeal, Moore argues for the first time that the City Council was the cat's paw of Huse. But Moore's argument comes too late. Moore's failure to timely raise the cat's paw theory in the district court in opposition to the Appellees' summary judgment motion waives that argument. *See Fruge*, 663 F.3d at 747.

We affirm summary judgment in favor of Huse because Moore has failed to point to evidence generating a fact dispute material to whether Huse was a final decisionmaker. We further affirm summary judgment in favor of the City Councilmembers because Moore has failed to point to evidence generating a fact dispute material to whether the Councilmembers were motivated by an intent to retaliate against Moore.

Moore also contends that the district court erred by failing to address on the merits his claim that the Appellees renewed his suspension during the September 17, 2012 City Council meeting in retaliation for his lawsuit against them. The district court concluded that although Moore raised this argument in his opposition to the motion for summary judgment, he did not plead it in his complaint. As result, the district court did not address whether summary judgment was proper.

The district court's failure to address Moore's claim was error. Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Moore alleged in his Second Amended Complaint that "[f]ollowing filing suit,

No. 13-10992

Defendants continue[] to subject Plaintiff to additional adverse employment actions, specifically in retaliation for filing this lawsuit to protect his First Amendment right to free speech." Moore also alleged that he served his lawsuit on Huse and the City on September 13, 2012, and on the City Councilmembers on September 17. According to Moore's complaint, on September 17, "immediately . . . after being served with this lawsuit the city council began the city council meeting" and "voted to suspend Plaintiff for an additional thirty (30) days without pay." These allegations were sufficient to provide notice to the Appellees and the district court that Moore was pleading a claim for retaliation based on the City Council's renewal of his suspension.

Although the district court erred in declining to address, on the merits, Moore's claim for retaliation based on his filing of the present suit, we may affirm on any basis supported by the record. *United States v. Clay*, 408 F.3d 214, 218 n.7 (5th Cir. 2005). The Appellees urge, as they did in the district court, that Moore has failed to point to evidence suggesting that the second suspension of Moore was motivated by a retaliatory purpose. The Appellees note that, in between the August 20 and September 17 meetings, the City Council received a report produced by their accountants detailing Moore's use of his City-issued credit card. They assert that they made their decision to suspend Moore a second time after the report showed a pattern by Moore of using the City-issued credit card to make improper personal purchases.

Moore makes three arguments in response to the Appellees' motion for summary judgment on this claim. First, Moore contends that the fact that the City Council failed to suspend other employees who had also improperly used City-issued credit cards is evidence of retaliatory intent. Second, Moore contends that the short period of time between when he served the City Councilmembers with this suit and when they decided to renew his suspension is evidence of retaliation. Third, Moore argues that the nonretaliatory reason

10

for the suspension proffered by the Appellees, that they suspended him in order to continue their investigation, is pretextual because the Appellees have failed to point to any evidence suggesting that they continued their investigation after the September 17 City Council meeting.

Moore has failed to point to evidence sufficient to create a material fact dispute as to whether his second suspension was retaliation for his filing of a lawsuit against members of the City Council. The Appellees note that, although the report mentions, generally, that multiple employees did not provide proper supporting documentation, only Moore is cited as using a City-issued credit card for personal use. Moore has failed to meet his burden on summary judgment by directing us to evidence showing that other City employees, who were not punished, used their credit cards to make personal purchases in a manner similar to Moore. Moore's sole remaining evidence that the City Council's renewal of his suspension was substantially motivated by protected activity is the fact that he served his lawsuit on the City Councilmembers the same day as the September 17 meeting. *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"). Even if Moore's evidence of temporal proximity is sufficient to infer that his First Amendment protected activity was a motivating factor in his suspension, however, the Appellees have pointed to evidence that they would have renewed Moore's suspension even had he not sued them: the accountants' report which concluded that Moore had made "several charges . . . for personal use." *See Hartman*, 547 U.S. at 260; *Mt. Healthy*, 429 U.S. at 287; *Jordan*, 516 F.3d at 301. Moore has failed to demonstrate that this reason was pretextual. *See Haverda*, 723 F.3d at 592. Summary judgment is affirmed on Moore's

claim that the Appellees renewed his suspension in retaliation for his filing of the present suit.

## IV.    CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.