NON-PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3775
_____

CHARLOTTE PINCKNEY; KYLE PINCKNEY,
                                        Appellants

v.

THE PEP BOYS – MANNY MOE & JACK, O/D/B/A PEP-BOYS

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-05350)
District Judge: Honorable C. Darnell Jones, II

Argued on June 3, 2021
Before: AMBRO, HARDIMAN, and PHIPPS, *Circuit Judges*.

(Filed: August 13, 2021)

Martell Harris [argued]
Nelson D. Berardinelli
The Trial Law Firm, LLC
428 Forbes Avenue, Suite 1700
Pittsburgh, PA 15219
*Attorneys for Appellants*

Nina K. Markey [argued]
Marc D. Esterow
Richard R. Harris
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102

*Attorneys for Appellee*

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

Charlotte and Kyle Pinckney are an African-American married couple. Pep Boys is a national company that sells auto parts, maintenance, and repair. When the Pinckneys went to Pep Boys in Charleston, South Carolina with a flat tire, they expected to pay a small fee to have their tire plugged and filled so they could get back on the road. Instead, after waiting several hours to have their car inspected, the Pep Boys manager tried to sell them four new tires even though the Pep Boys technician recommended only two. When Mr. Pinckney declined the new tires and again asked for just a plug, the manager responded, "I'm not doing shit for you [n******]." App. 46. The tire was plugged only after the Pinckneys pleaded with the technician, who asked the Pinckneys to "occupy" the manager while he did the work for free. App. 91–92.

The Pinckneys sued Pep Boys under 42 U.S.C. § 1981, a law first passed in the aftermath of the Civil War, which prohibits racial discrimination in the making and enforcement of contracts. The statute currently reads:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens
> . . . .
> (b) "Make and enforce contracts" defined

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a)–(b).

According to the Pinckneys, Pep Boys interfered with their right to "make and enforce contracts" in two ways. They called the first a "hostile retail environment" theory and claimed the manager's use of the "N-word" violated the statute. Second, they argued the Pep Boys manager anticipatorily breached a contract when he said, "I'm not doing shit for you," in violation of § 1981's prohibition on terminating a contract because of race. *See* § 1981(b).

After the Pinckneys' § 1981 claim survived summary judgment, Pep Boys filed a "Motion to Preclude" the Pinckneys from pursuing their hostile retail environment theory at trial. *See* App. 1. In that motion, Pep Boys argued retailers are liable under § 1981 only if the customer was denied service. The District Court agreed with Pep Boys and issued an order precluding the Pinckneys from proceeding under the hostile retail environment theory and requiring the Pinckneys to prove they were denied service.

The anticipatory breach theory was tried and submitted to the jury. After concluding the Pinckneys were not denied service, the jury returned a verdict in favor of Pep Boys. The Pinckneys moved for a directed verdict and for a new trial under Rules 50 and 59 based on their anticipatory breach theory. The District Court denied those motions and entered judgment for Pep Boys. The Pinckneys appeal, arguing the District Court erred when it precluded their hostile retail environment theory and denied their Rule 50

3

and 59 motions. For the reasons that follow, we will vacate and remand on the first issue and affirm on the second.

I[1]

What did the Pinckneys have to prove to establish Pep Boys's liability under § 1981? The statutory protections are triggered by an attempt to contract. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Our precedent then identifies three elements: racial minority status, intentional discrimination, and an interference with the plaintiff's right to "make and enforce contracts" as defined in § 1981(b). *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). It is uncontested that the Pinckneys: attempted to contract with Pep Boys, are racial minorities, and suffered intentional discrimination. So this case turns on the final element: whether Pep Boys violated the Pinckneys' right to make and enforce contracts.

The Pinckneys argue their right to make and enforce a contract was violated when the manager subjected them to severe racial harassment by calling them the "N-word." Pep Boys responds that § 1981 can be violated only if the Pinckneys were denied service. Neither contention is correct. Section 1981 prohibits race discrimination in the making and enforcement of contracts. *See* § 1981(a); *McDonald v. Sante Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976) ("[Section 1981] proscribe[s] discrimination in the making or enforcement of contracts against, or in favor of, any race."). The law prohibits more than

---

[1] The District Court exercised jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291 and the Pinckneys timely appealed.

4

just an outright denial of service because it protects more than contract formation. *See* § 1981(b). Yet it does not support a cause of action for every instance of racial discrimination or hostility. *See Domino's Pizza*, 546 U.S. at 479; *see also Hammond v. Kmart Corp.*, 733 F.3d 360, 364 (1st Cir. 2013) ("[S]ection 1981 'does not provide a general cause of action for race discrimination.'" (quoting *Green v. Dillard's, Inc.*, 483 F.3d 533, 538 (8th Cir. 2007))).

So racial discrimination is actionable under § 1981 only when it interferes with one of the rights enumerated in the statute. This analysis will be fact and context dependent; it cannot be reduced to simple questions like "were plaintiffs denied service" or "did they face racial hostility."

Perhaps because of the atextual way the parties framed their competing versions of the issues, the District Court erred by limiting the Pinckneys to just one way to show a violation of the statute (denial of service). So we will vacate the District Court's March 28, 2019 order and remand the case so the District Court can consider whether Pep Boys deprived the Pinckneys of the right to make a contract when its manager called them the "N-word."

## II

The Pinckneys also challenge the denial of their motions for a directed verdict and new trial. But viewing the evidence in the light most favorable to Pep Boys, *see Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006), the jury had sufficient evidence to find Pep Boys did not deny the Pinckneys service. Nor did the District Court abuse its

5

discretion in denying the motion for a new trial. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365 (3d Cir. 1999).

Right after the manager told the Pinckneys "I'm not doing shit for you [n\*\*\*\*\*\*]," he ordered the technician to air up the Pinckneys' tire and get the car out of the garage. The Pinckneys would have us interpret this as an order *not* to plug the tire. But the evidence at trial did not require such a conclusion, especially when the technician *did* plug the tire. It was the jury's duty to decide whether the manager's statement was a refusal to provide service or an order to the technician to fix the tire. The jury chose the latter, and the District Court did not err in allowing that decision to stand.

\*      \*      \*

For the reasons stated, we will affirm the District Court order denying the Pinckneys' motions for a directed verdict and new trial. But we will vacate its order precluding the Pinckneys from proving an impairment of their contract rights apart from a denial of service, and we will remand for further proceedings consistent with this opinion.

6