# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2019

Lyle W. Cayce
Clerk

No. 18-40408

LUCA CICALESE, Medical Doctor; CRISTIANA RASTELLINI, Medical Doctor,

      Plaintiffs - Appellants

v.

THE UNIVERSITY OF TEXAS MEDICAL BRANCH,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before ELROD, WILLETT, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

Luca Cicalese, M.D., and Cristiana Rastellini, M.D. ("Cicalese and Rastellini" or "Appellants"), appeal the dismissal of their Title VII national origin discrimination claims against the University of Texas Medical Branch at Galveston ("UTMB"). We affirm in part and vacate and remand in part.

I.

Cicalese and Rastellini, a married couple, were born in Italy. They moved to the United States and both began working for UTMB in 2007. Cicalese worked as a tenured professor and director of UTMB's Transplant and Organ Failure Center. Rastellini accepted a tenure-track faculty position and directed

No. 18-40408

UTMB's Transplant and Cellular Transplantation research. When they arrived in the United States, neither was licensed to practice medicine in Texas. But UTMB granted them faculty medical licenses and offered to renew those licenses indefinitely. All went well for several years: Cicalese was appointed UTMB's director of Hepatobiliary Surgery and created a Ph.D. program for international students in 2012; Rastellini opened a new clinical islet transplant program.

But, according to the allegations in the First Amended Complaint, the couple began having problems after Dr. Danny Jacobs joined UTMB as Dean in late 2012. Soon after being hired, Jacobs said to the couple, "What are you doing here? You should go back to Italy." Jacobs altered job performance evaluation criteria so that Rastellini could not achieve positive evaluations without obtaining funding from the National Institutes of Health. As a result, Rastellini received negative evaluations and was moved to an "inadequate" laboratory to make room for another researcher. Jacobs also refused to publicize an "Order of Merit" presented to Rastellini from the President of Italy. Cicalese fared no better under Jacobs's leadership. Jacobs suspended UTMB's liver transplant program, removed Cicalese from his position as director of the Transplant and Organ Failure Center, and investigated Cicalese's handling of liver cancer surgeries. Cicalese believes this investigation was a "sham" meant to discredit him.

The couple's problems intensified in late 2014 when Jacobs hired Dr. Douglas Tyler as chairman of surgery. Tyler, when speaking of the Italian Ph.D. students in Cicalese's program, said he did not care about "these Italians." And, perhaps more than once, Tyler referred to "stupidity" and failure to "understand[] a situation" as an "Italian thing." Tyler excluded Rastellini from departmental activities and made demeaning comments about her work. Rastellini was forced to cease her own research and "work for

2

another, less-experienced" researcher. She was demoted to "a part-time, non-tenure track position at a significantly lower pay rate." Tyler also reduced Cicalese's salary, restricted his work, refused to provide him favorable references, and demeaned him and his work. Cicalese's director titles were "reassigned to American Doctors who are less qualified than Dr. Cicalese." In addition, Tyler instated a new policy rescinding all permanent faculty licensure waivers. According to Appellants, this was meant to target them as the "[o]nly two physicians" at UTMB who benefited from the permanent waiver, and they were both Italians.

The couple sued UTMB, alleging that "[d]irect and/or circumstantial evidence exists showing that [UTMB] intended to discriminate against [them] because of their national origin, in violation of Title VII." UTMB moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted UTMB's motion, concluding the couple had failed to state a plausible national origin discrimination claim or a hostile work environment claim under Title VII. Cicalese and Rastellini appeal, arguing the district court erred by holding they failed to state a claim for national origin discrimination.[1]

## II.

We review *de novo* a district court's dismissal under Rule 12(b)(6). *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 701–02 (5th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] Appellants have failed to contest on appeal the dismissal of their hostile work environment claims. Any error as to those claims is therefore waived. *See Valle v. City of Houston*, 613 F.3d 536, 544 n.5 (5th Cir. 2010).

No. 18-40408

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations," but the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 WRIGHT & MILLER, FED. PRAC. & PROC. § 1216, 235–36 (3d ed. 2004)).

## III.

On appeal, Appellants contend the district court erred by holding them to a heightened pleading standard when dismissing their national origin disparate-treatment claims.[2] "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). A plaintiff can prove discriminatory motive through either direct or circumstantial evidence. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). When a plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "Under this framework, the plaintiff

---

[2] The district court also concluded that "Cicalese and Rastellini have not pled a disparate-impact theory in their complaint." Appellants seem to contest that conclusion on appeal, but their entire argument on that score is the following: "Because the only physicians affected [by the Faculty Temporary License Extensions policy] were Italian, Dr. Cicalese's claim would be in the nature of both a disparate treatment *and a disparate impact claim*, contrary to the Court's holding." (emphasis added). Even assuming Appellants pleaded a disparate-impact claim in their live complaint, this "passing reference" is insufficient to prevent waiver on appeal. *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). We therefore affirm the district court's conclusion that Appellants failed to plead a disparate-impact claim.

must first create a presumption of discrimination by making out a prima facie case of discrimination." *Id.*

In Appellants' view, the district court confused the plausibility pleading standard of *Twombly/Iqbal* with the evidentiary standard of *McDonnell Douglas*. Under the *Twombly/Iqbal* pleading standard, a complaint must "state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570. This differs, of course, from the *McDonnell Douglas* standard, which "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Appellants are right, as the district court acknowledged, that the Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). A district court therefore errs by requiring "a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]" *Id.* But we have also explained that, although plaintiffs do not "have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added).

Thus, our task is to identify the ultimate elements of a disparate treatment claim and then determine whether the district court erred by requiring Appellants to plead something beyond those elements to survive a motion to dismiss. As we have stated, there are two ultimate elements a

plaintiff must plead to support a disparate treatment claim under Title VII: (1) an "adverse employment action," (2) taken against a plaintiff "*because of* her protected status." *See Raj*, 714 F.3d at 331 (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 576 (5th Cir. 2004)); *see also id.* (explaining a plaintiff must allege "facts, [either] direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's] race or national origin or that [the employer] treated similarly situated employees of other races or national origin more favorably"); *Pacheco*, 448 F.3d at 787 (a "discriminatory motive is required" for disparate treatment claims). If a plaintiff's disparate treatment claim depends on circumstantial evidence, he will "ultimately have to show" that he can satisfy the *McDonnell Douglas* framework. *Chhim*, 836 F.3d at 470. In such cases, we have said that it can be "helpful to reference" that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim. *See, e.g.*, *id.* at 470–71 (considering whether the plaintiff pleaded facts suggesting that the employer hired an applicant who was "similarly situated" to the plaintiff or "less qualified" than the plaintiff in accordance with the *McDonnell Douglas* framework).

We reiterate, however, that a court errs by requiring a plaintiff to plead something more than the "ultimate elements" of a claim. *Id.* at 470. A court thus inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 512 (explaining "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid mechanized, or ritualistic'" (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978))); *see also Twombly*, 550 U.S. at 508 (citing *Swerkiewicz*, 534 U.S. at 508) (explaining that the *Twombly* pleading standard "[does] not

require[ ] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"). Such inquiries are better suited to summary judgment. *See, e.g., Thompson v. City of Waco*, 764 F.3d 500, 506 (5th Cir. 2014) (explaining "that further assessment of [appellant's] claim is fact-intensive and better suited for the summary-judgment or trial stage").

The district court found Appellants did not allege facts plausibly showing any adverse actions taken *because of* their national origin. The court reasoned Appellants did not allege with adequate specificity that any "similarly situated" non-Italian employee was treated differently, and it therefore concluded they failed to plausibly allege circumstantial evidence of discriminatory motive. Specifically, the court faulted the live complaint because it failed to sufficiently allege how Appellants' co-workers "were treated differently under *nearly identical* circumstances." (emphasis added). The court also reasoned that Jacobs's and Tyler's derogatory statements about Italians were mere "stray remarks" and so could not plausibly constitute direct evidence of discriminatory motive. *Cf., e.g., Raj*, 714 F.3d at 331 (concluding plaintiff's "complaint and speculation did not allege any facts, direct or circumstantial, that would suggest [employer's] actions were based on [plaintiff's] race or national origin"). In arriving at that conclusion, the court faulted Appellants for failing to allege precisely when and how many times Tyler and Jacobs made derogatory remarks about Italians.

We disagree with the district court's analysis. While a close call, we conclude that Cicalese and Rastellini—in claiming UTMB's various actions against them were motivated by anti-Italian bias—alleged sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547; *see, e.g., Swierkiewicz*, 534 U.S. at 514 (noting with approval that the complaint "detailed the events" transpiring before the adverse employment action, "provided relevant dates, and included the ages and

No. 18-40408

nationalities of at least some of the relevant persons involved with [the plaintiff's] termination"). The district court erred by holding Appellants to a heightened pleading standard. The court's analysis of the complaint's allegations—scrutinizing whether Appellants' fellow employees were really "similarly situated" and whether Jacobs's and Tyler's derogatory statements about Italians amounted to "stray remarks"—was more suited to the summary judgment phase. *See, e.g., Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405–06 (5th Cir. 2005) (assessing, for summary judgment purposes, whether plaintiffs adduced evidence "that they were treated less favorably than a similarly situated person of a different race"); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) ("Where a plaintiff offers remarks as direct evidence [of discrimination], we apply a four-part test to determine whether they are sufficient to overcome summary judgment."). At this stage of the proceedings, a plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss. On a *de novo* review of Appellants' live complaint, we conclude they surmounted that lower bar.

Accordingly, we vacate the district court's dismissal of Appellants' disparate treatment claims and remand for further proceedings.[3]

IV.

We AFFIRM the district court's judgment concerning Appellants' Title VII disparate impact and hostile work environment claims. We VACATE the district court's judgment dismissing Appellants' Title VII disparate treatment claim and REMAND for further proceedings consistent with this opinion.

AFFIRMED IN PART; VACATED AND REMANDED IN PART

---

[3] We need not consider UTMB's alternative argument that Appellants failed to exhaust their administrative remedies under Title VII. As UTMB acknowledges, the district court did not resolve this issue in light of its dismissal order. We therefore remand to the district court for consideration of that issue in the first instance.