# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2022

Lyle W. Cayce
Clerk

No. 20-20281

Kenneth Wayne Hawkins; Cheryl Brown Potts;
Kimanisha Myles; Reba Curren Jeffery; Stephanie Winn;
Loretta Gulley; Jeannie Ware; Jamie Wasicek;
Shealisha Adams,

*Plaintiffs—Appellants*,

*versus*

The United States Department of Housing and Urban
Development,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:18-CV-3052

ON PETITION FOR REHEARING

Before Wiener, Dennis, and Duncan, *Circuit Judges*.

Wiener, *Circuit Judge*:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

IT IS ORDERED that the petition for rehearing is DENIED. The opinion, filed October 13, 2021, is WITHDRAWN, and the following is SUBSTITUTED:

Plaintiffs-Appellants ("Tenants") alleged that they were living in substandard conditions in a Houston, Texas "Section 8" housing project. They sought relocation assistance from the Department of Housing and Urban Development ("HUD"), insisting that HUD was obliged under federal law to provide such assistance. When HUD chose to continue its contract with the housing project and declined to offer Tenants relocation assistance, they sued HUD to obtain it. Tenants also alleged intentional discrimination under the Fifth Amendment's equal protection component.

We agree with the district court that we lack jurisdiction for Tenants' Administrative Procedure Act ("APA") and Fair Housing Act ("FHA") claims because Tenants have not alleged a final agency action that is reviewable. We also agree on the merits that Tenants have failed to state a claim for which relief can be granted on their Fifth Amendment equal protection claim.

I.

Background

Tenants are African-Americans who rent apartments in Coppertree Village, a privately owned complex in Houston. HUD's relationship with Coppertree dates back to the early 1980s, when the agency first signed a housing assistant program ("HAP") contract with Coppertree's then-owner. HUD's most recent renewal of its contract relationship with Coppertree was in 2013. HUD approved assignment of the contract to Coppertree's current owner in 2015. The current owner was originally a named defendant in this lawsuit but has been dismissed voluntarily.

The HAP contract requires the owner to maintain the rental units in a "decent, safe, and sanitary" condition. HUD regulations provide that the

agency "will inspect" Section 8 housing "at least annually" and "at such other times as HUD may determine to be necessary to assure that the owner is meeting his or her obligation to maintain the units and the related facilities in decent, safe, and sanitary condition."[1]

Two HUD inspections (in June and September 2018) revealed "serious deficiencies" in many of Coppertree's rental units and in the property's common features. These wide-ranging problems included infestations of cockroaches and spiders, leaky roofs that spawned colonies of mold, widespread lack of operable locks, and missing or nonfunctioning smoke detectors. As a result, HUD issued two Notices of Default ("NOD") to Coppertree's owner. The NODs instructed the owner to take corrective action and warned that failure to comply could result in HUD exercising "any and all available remedies." In response, Coppertree's owner submitted a survey of the property and began to undertake repairs. The parties disagree about whether the repair efforts have resolved the many issues identified in the 2018 inspections.

Tenants criticized HUD's decision to maintain the HAP contract with Coppertree and the agency's focus on correcting the deficiencies revealed by the inspections. Tenants also contended that, because Coppertree remained in a state of disrepair, HUD was obligated to provide "assistance for relocation" that would help them move elsewhere. They specifically alleged that HUD's failure to issue vouchers to them was arbitrary and capricious under the APA.[2] Tenants further alleged that HUD's inaction amounted to race-based discrimination in violation of the Fair Housing Act[3] and the equal protection component of the Fifth

---

[1] 8 C.F.R. § 886.323(d).

[2] 5 U.S.C. § 701 *et seq.*

[3] 42 U.S.C. § 3601 *et seq.*

Amendment.[4] Contrasting Coppertree with Section 8 properties elsewhere in Houston, Tenants alleged that HUD's failure to provide Tenant Protection Vouchers was done with the discriminatory motive of "maintain[ing] racial segregation and . . . disadvantag[ing] a group of minority households."

HUD moved to dismiss Tenants' claims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted HUD's motion and dismissed the Tenants' claims. We affirm.

## II.

### Standard of Review

We review a district court's grant of a motion to dismiss *de novo*.[5] "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states a claim to relief that is plausible on its face."[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7]

A motion to dismiss that contests jurisdiction should be granted if "the court lacks the statutory or constitutional power to adjudicate the case."[8] The burden lies with the party asserting jurisdiction to establish "that jurisdiction does in fact exist."[9]

---

[4] *See Washington v. Davis*, 426 U.S. 229 (1976).

[5] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[6] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (cleaned up).

[7] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[8] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (cleaned up).

[9] *Ramming*, 281 F.3d at 161.

## III.

## Final Agency Action

The APA provides judicial review of "final agency action" only.[10] The Act defines "agency action" to include the "denial of relief," a "failure to act," and a "sanction," which includes "withholding of relief."[11] The FHA has no provision for review of agency action, so Tenants' FHA claim depends on the APA's judicial-review provisions.[12] Our jurisdictional analysis therefore pertains equally to Tenants' claims under the APA[13] and the FHA.[14]

> As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'[15]

Tenants have not adequately alleged a specific HUD action that this court can review. They only contend that there is nothing further HUD would have to do to issue relocation assistance, yet the agency has not done so. HUD's continued work to salvage its contract with Coppertree Village

---

[10] 5 U.S.C. § 704; *see, e.g.*, *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).

[11] 5 U.S.C. § 551(10)(B), (13); *see also id.* § 701(b)(2) (incorporating these definitions into the judicial review chapter).

[12] *See Godwin v. Sec'y of Hous. & Urb. Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004) (FHA confers no cause of action against HUD); *see also McCardell v. U.S. Dep't of Hous. & Urb. Dev.*, 794 F.3d 510, 522 (5th Cir. 2015) (FHA does not waive state sovereign immunity).

[13] *See* 5 U.S.C. § 706(2)(A).

[14] *See* 42 U.S.C. § 3608(e)(5).

[15] *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

does not prevent the agency from issuing relocation assistance. There is, therefore, no "'consummation' of the agency's decisionmaking process" that this court can review. The district court correctly determined that it lacked jurisdiction over Tenants' APA and FHA claims.

## IV.

### Racial and Ethnic Discrimination

Tenants also claim that HUD's withholding of assistance constitutes intentional discrimination on the basis of race and ethnicity, in violation of the Fifth Amendment to the Constitution. "[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups."[16] HUD concedes that the APA's review provisions do not foreclose review of this constitutional claim.[17]

"Proof of racially discriminatory intent or purpose is required" to show an equal protection violation.[18] Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."[19] Tenants may rely on circumstantial evidence (or allegations of such, at the pleading stage) to show discriminatory purpose. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."[20]

---

[16] *Washington*, 426 U.S. at 239.

[17] *See Webster v. Doe*, 486 U.S. 592, 603–05 (1988) (holding § 701(a)(2) barred statutory but not constitutional claims of discrimination).

[18] *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

[19] *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

[20] *Arlington Heights*, 429 U.S. at 266; *see also Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (listing types of evidence that may support discrimination claim).

Tenants' allegations of intentional discrimination rely on the fact that the housing units HUD subsidizes at Coppertree are in worse condition than HUD-subsidized units elsewhere in the Houston area. They allege that "Coppertree Village is located in a 0% White non-Hispanic census tract. Coppertree Village' [*sic*] units are 87% occupied by Black or African American households." Tenants further allege that HUD subsidizes housing in disproportionately white areas that does meet minimum standards, with comparable rent but vastly higher quality. Tenants reference as comparators several projects restricted to elderly tenants: six in the Woodlands, outside Houston, and two within the city limits—the only two out of forty-four located, in majority-white census districts. HUD does not own or operate those projects, but subsidizes tenants living there.

HUD allegedly knows about these disparities but continues to make decisions that Tenants claim denies them relocation assistance to which they are entitled. Tenants characterize this disparate treatment as a "substantive departure" from HUD's mission,[21] and thus probative of discriminatory intent. We disagree.

These allegations by Tenants fail to state a plausible claim of intentional racial discrimination. Even when taken as true, they show at most that HUD is aware of varying conditions in the numerous housing projects that it subsidizes in the Houston area. In no way, however, do these allegations support an inference that HUD has made any decision "'because of,' not merely 'in spite of,'" different conditions.[22] Tenants do not allege any procedural irregularities in HUD's enforcement actions at Coppertree nor in its consideration of relocation vouchers for Coppertree residents. Tenants also fail to allege that HUD has provided relocation assistance to any similarly situated non-minority occupants. Tenants have failed to raise a

---

[21] *Cf. Veasey*, 830 F.3d at 231.

[22] *Feeney*, 442 U.S. at 279.

plausible inference of discriminatory purpose, so the district court correctly dismissed their Fifth Amendment claim.

AFFIRMED.