# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-50523
Summary Calendar

---

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2025

Lyle W. Cayce
Clerk

DAVID EDWARD GAUDETTE,

*Plaintiff—Appellant*,

*versus*

ANGEL HEART HOSPICE, L.L.C., *doing business as* NEW CENTURY
HOSPICE, INCORPORATED,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-769

---

Before RICHMAN, DOUGLAS, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

David Gaudette brought four Title VII claims against his former
employer Angel Heart Hospice, L.L.C., doing business as New Century
Hospice, Inc. (New Century).  These claims revolve around Gaudette's

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

sexual orientation. The district court granted New Century's motion for judgment on the pleadings, dismissing all of Gaudette's claims. We affirm.

## I

Gaudette, a gay man, worked as a hospice care nurse for New Century. Gaudette alleges that a coworker made a joke disparaging his masculinity at a staff meeting. Though Gaudette was not present, many coworkers allegedly laughed, and management took no action during the meeting. As a result of this incident and New Century's response to it, Gaudette resigned and filed suit against New Century. Gaudette alleged a hostile work environment, constructive discharge, retaliation, and disparate treatment. While there is some question of whether the disparate treatment claim was distinctly alleged in the Original Complaint, the district court considered it, as do we.

New Century filed a Rule 12(c) motion for judgment on the pleadings. In Gaudette's response, he argued against dismissal and alternatively asked for leave to amend and attached a First Proposed Amended Complaint. A Magistrate Judge reviewed the motions and recommended that the 12(c) motion be granted because Gaudette did not plead a plausible Title VII claim and that the motion for leave be dismissed as futile because it would not cure the defective pleading. Gaudette timely filed objections to the report and recommendations, but he substantively based his arguments on the allegations of the First Proposed Amended Complaint, not the live Original Complaint. Concurrently, he again sought leave to amend his complaint with a Second Proposed Amended Complaint. The district court overruled Gaudette's objections and adopted the Magistrate Judge's report and recommendation as its own order. The district court also denied Gaudette leave to file the Second Proposed Amended Complaint. The district court

No. 24-50523

accordingly entered a final judgment, and Gaudette timely filed a notice of appeal.[1]

## II

Gaudette argues that his "four claims are adequately pled in [his Second Proposed Amended Complaint]," and he argues the district court erred in denying him leave to amend his complaint. "The standard for dismissal [under Rule 12(c)] 'is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).'"[2] Similarly, "[i]t is within the district court's discretion to deny a motion to amend if it is futile."[3] An amended complaint is futile if it "would fail to state a claim upon which relief could be granted."[4] So, to determine futility, "we will apply 'the same standard of legal sufficiency as applies under Rule 12(b)(6).'"[5] Because both a Rule 12(c) motion and a denial of a motion for leave to amend are evaluated under the same standard, we evaluate Gaudette's grievances concurrently.

The district court did not grant leave to amend, so the live pleading is—and has always been—the Original Complaint. However, we analyze Gaudette's allegations from the Second Proposed Amended Complaint, in recognition of the fact that the standards of review for Rule 12(c) motions and motions to amend are the same and this is the most robust complaint offered.

---

[1] Fed. R. App. P. 4(a)(1)(A).

[2] *Johnson v. Miller*, 98 F.4th 580, 583 (5th Cir.) (quoting *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015)), *certifying question to* 396 So. 3d 1137 (Miss. 2024).

[3] *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000).

[4] *Id.* at 873.

[5] *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

No. 24-50523

## III

Each of Gaudette's four claims springs from the same set of alleged facts. At a staff meeting without Gaudette present, New Century staff discussed a request from a patient "who did not want any male staff coming into her room." In response to a concern noting the lack of female nurses scheduled to work over the weekend, a coworker said, "We can send David [Gaudette]. He's not really a man." Many in the room "burst into laughter," and Gaudette's supervisor, John Godby, "remained silent" and "did not take any action during the meeting or make any statements to communicate that such . . . conduct was unacceptable." Another gay coworker who was present during the meeting informed Gaudette of this incident. The coworker told Gaudette he resigned after a meeting with Godby in which he raised concern about the incident before Godby denied hearing the comment at the meeting and allegedly "pressured him to resign." Due to the absence of an "investigation" or "any disciplinary or corrective action against the employee who openly made the anti-gay slur," Gaudette believed "the working conditions at New Century had become so untenable" that he "reasonably felt he had no other option and was compelled to resign," which he did five days after the incident. After Gaudette's resignation, "New Century then [allegedly] retaliated against him by sending him a letter . . . falsely claiming that he had violated HIPAA and threatening him with the potential loss of his nursing license." The letter alerted Gaudette to a potential HIPAA violation, reminded him of his legal obligations, and suggested the parties could "peacefully coexist."

No. 24-50523

## A

"A claim of 'hostile environment' sex discrimination is actionable under Title VII."[6] "An employee who brings a hostile work environment claim must show that (1) []he belongs to a protected class; (2) []he was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action."[7] "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment."[8] "Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance."[9] "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[10]

Gaudette alleges that the comment at the meeting was "blatantly offensive, mocking, demeaning and ridiculing" and that Godby and New Century's "silence and acquiescence" "effectively condoned the comment and communicated that ridicule, humiliation, and discriminatory abuse . . . is

---

[6] *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986)).

[7] *Id.* (citing *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005)).

[8] *Id.* (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)).

[9] *Id.* (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)).

[10] *Id.* (alteration in original) (quoting *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 n.3 (5th Cir. 1998)).

acceptable." Gaudette alleges this constitutes a hostile work environment because "[n]ot being able to trust your employer to tell the truth and protect you from outrageous discrimination is a baseline term, condition, and privilege of employment."

The facts alleged do not amount to a hostile work environment. Gaudette does not allege "pervasive" harassment.[11] Rather, he points to one isolated instance and the response to it over the course of a four-year tenure with New Century, which he otherwise described as "mutually respectful and professional."

While some isolated incidents can rise to the level of severity to sustain a hostile work environment claim,[12] this isolated incident does not. Title VII "is not a 'general civility code,' and '"simple teasing," offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."'"[13] The incident here is less severe than those cases in which we have held that a single incident could support a hostile work environment claim.[14] Rather, the comment was "a mere offensive utterance," though offensive it may have been.[15] The Second Proposed Amended Complaint fails to state a claim for hostile work environment.

---

[11] *Id.* (citing *Aryain*, 534 F.3d at 479).

[12] *Id.*

[13] *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

[14] *Cf. Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (holding that plaintiff stated an actionable hostile work environment claim when his "supervisor directly called him a 'Lazy Monkey A___ N___' in front of his fellow employees").

[15] *Lauderdale*, 512 F.3d at 163 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

No. 24-50523

## B

The allegations similarly fail to support a constructive discharge claim. To plead a viable constructive discharge claim, a plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign."[16] Factors considered in this assessment include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.[17]

Notably, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim."[18]

Gaudette has not pleaded any facts that fall within the seven aforementioned factors. Accordingly, Gaudette's Second Proposed Amended Complaint fails to plead a constructive discharge claim adequately.

## C

To establish Title VII retaliation, Gaudette must show that (1) he "engaged in protected activity," (2) he "suffered an adverse employment action," and (3) "a causal link exists between the protected activity and the

---

[16] *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

[17] *Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021) (quoting *Lauderdale*, 512 F.3d at 167).

[18] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)).

adverse employment action."[19]  Gaudette alleges New Century "retaliated against him by sending him a letter [weeks after his resignation] falsely claiming that he had violated HIPAA and threatening him with the potential loss of his nursing license."

Gaudette does not sufficiently identify an adverse employment action. To support a retaliation claim, Gaudette must show employer conduct that would "dissuade a reasonable worker from making or supporting a charge of discrimination."[20]  The plain language of the letter (1) identified the potential HIPAA violation, (2) reminded Gaudette of his continued legal obligations, (3) requested Gaudette's compliance, and (4) stated New Century would take action if Gaudette did not comply with HIPAA.  It stated New Century is "happy to peacefully coexist, but [it] cannot and will not tolerate HIPAA violations."  Gaudette construes this as a quid pro quo, a pretextual threat to discourage him from bringing a claim.  We are dubious that the language constitutes the threat Gaudette indicates.  Still, we have noted that threats in many circumstances do not constitute an adverse employment action.[21]  Gaudette cites no authority indicating how this alleged threat constitutes one.  Gaudette fails to allege a retaliation claim adequately.

_____

[19] *Wright v. Union Pac. R.R.*, 990 F.3d 428, 433 (5th Cir. 2021) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).

[20] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

[21] *United States ex rel. Johnson v. Raytheon Co.*, 93 F.4th 776, 790-91 (5th Cir.) (calling "persuasive" an unpublished case in which we concluded that a "single statement that was not even a direct threat was not a materially adverse employment action" (quoting *Hernandez v. Johnson*, 514 F. App'x 492, 499 (5th Cir. 2013) (per curiam))), *cert. denied*, 145 S. Ct. 356 (2024) (mem.); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (noting that superior's "oral threats" did not "rise to the level of an adverse employment action").

No. 24-50523

**D**

"To plead a disparate-treatment claim under Title VII, a plaintiff must allege facts plausibly showing '(1) an "adverse employment action," (2) taken against a plaintiff "because of h[is] protected status."'"[22] "[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment."[23] The phrase "'terms, conditions, or privileges of employment[]' is broad . . . and 'it covers more than "terms" and "conditions" in the narrow contractual sense.'"[24] Title VII does not require a showing that the harm endured was "significant,"[25] but it also "does not permit liability for de minimis workplace trifles."[26]

Gaudette argues his "terms, conditions, or privileges of employment" were affected by New Century's failure to "protect" him from discrimination, by its "denial of equal access to investigations that are supposed to follow complaints of discrimination," and by its "denial of truthful communications." The facts alleged, however, are not equivalent to the kinds of discrimination that we have held support a disparate treatment claim.[27] Gaudette does not point us to a case where we have found a valid

---

[22] *Hamilton v. Dallas County*, 79 F.4th 494, 502 (5th Cir. 2023) (en banc) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)).

[23] *Id.* at 502-03 (quoting 42 U.S.C. § 2000e-2(a)(1)).

[24] *Id.* at 503 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

[25] *Muldrow v. City of St. Louis*, 601 U.S. 346, 360 (2024).

[26] *Hamilton*, 79 F.4th at 505.

[27] *See, e.g.*, *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 428 (5th Cir. 2023) (per curiam) (holding that teacher plausibly pleaded a disparate treatment claim by alleging that the school district paid only for white males to attend development program); *Hamilton*, 79 F.4th at 497 (holding that a police department policy permitting only men to select full

No. 24-50523

disparate treatment claim under similar circumstances.  Additionally, while Gaudette may disagree with how New Century handled the comment, "[Gaudette] identifies no evidence to support the conclusion that he was treated less favorably than any similarly situated, [heterosexual] employee" subjected to a disparaging joke.[28]   Accordingly, Gaudette fails to state a plausible disparate treatment claim.

## IV

Because Gaudette's more robust Second Amended Proposed Complaint inadequately pleads a Title VII claim, his Original Complaint likewise fails on the same standard.

*      *      *

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

weekends off provided the basis for a plausible disparate treatment claim); *see also Muldrow*, 601 U.S. at 359 (explaining that a police officer's "allegations, if properly preserved and supported," stated a claim under Title VII when the officer alleged that she was transferred away from her specialized unit on account of her sex).

[28] *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024).