# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 30, 2026

Lyle W. Cayce
Clerk

No. 25-40215

Shanter Norman,

*Plaintiff—Appellant*,

*versus*

Beaumont Independent School District; Beaumont Independent School District Police Department; Shannon Allen, *Doctor, Superintendent, Individually and in her Official Capacity*; Joseph Malbrough, *Chief, Individually and in his Official Capacity*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:24-CV-7

Before Stewart, Engelhardt, and Douglas, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:[*]

It is no secret that "the plaintiff is the master of his complaint." *Cody v. Allstate Fire & Cas. Ins.*, 19 F.4th 712, 715 (5th Cir. 2021) (citation modified). Plaintiff Shanter Norman has tried to bob and weave his way

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

around pleading requirements in federal court, rather than alleging a factual basis for his claims. The district court said, "no more." We AFFIRM.

## I.

Norman asserted First- and Fourteenth-Amendment-based 42 U.S.C. § 1983 claims, along with retaliation, disparate treatment, and hostile work environment claims under the Texas Commission on Human Rights Act ("TCHRA") against the Beaumont Independent School District ("BISD"), BISD Police Department, Superintendent Shannon Allen, and BISD Police Department Chief Joseph Malbrough. In a truncated Amended Complaint, Norman alleged BISD terminated his position with the BISD Police Department following an internal investigation into a Facebook post he made. This post allegedly "pray[ed] for integrity and accountability for those in positions of power." Am. Compl. ¶ 6. After Norman published the post, he alleges a supervisor "constructed false allegations that [Norman] had been disrespectful about his past and present supervisors." *Id.* That supervisor also purportedly "contrived reports of anonymous complaints" against Norman. *Id.*

Norman was suspended without pay while leadership investigated him. From there, he concludes he "was subjected to harassment, bullying, and discriminatory acts." *Id.* ¶ 20. Norman provides no details about the nature of this harassment. He was discharged from employment on January 5, 2023. After his termination, Norman filed charges of discrimination with the Texas Workforce Commission and the EEOC and received a right to sue letter. He filed this action in Texas state court, and Defendants promptly removed to federal court.

Defendants moved to dismiss Norman's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), attaching the Facebook post and EEOC charge as exhibits. After all, Norman's Amended Complaint alleged

this Facebook post was the catalyst for his termination and the lynchpin of his claims. The post read:

> My prayer: If I'm ever placed in a supervisor position or over an agency, I pray that I will listen to the ones under my command. I pray I will not be to[o] position driven and power struck not to have integrity and accountability. I have served my country and community for years. It's been an honor and a privilege. I've had the opportunity to learn a lot and see how not to run an agency and how not to supervise. To be continued.

In his response to the motions to dismiss, Norman attached a declaration providing more allegations that "would have provided essential context" for the Facebook post. That supposed context was nowhere to be found in Norman's already-once-amended complaint, so the district court did not include the new allegations in its analysis. It dismissed all of Norman's claims with prejudice. On appeal, Norman relies on unpleaded allegations, evidence filed in connection with a pending summary judgment motion, and entirely new theories of relief to suggest he stated a claim.

We review the district court's Rule 12(b)(6) dismissal de novo, *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 431 (5th Cir. 2026), and address each argument on appeal, in turn. Norman challenges the district court's dismissal of his (1) § 1983 individual capacity claims under the First Amendment and Fourteenth Amendment; (2) § 1983 municipal liability claims against BISD; and (3) TCHRA retaliation and disparate treatment claims against BISD.[1] We start, though, with the procedural elephant in the room—the pleading standard.

---

[1] Norman has waived any arguments about his (1) claims against the BISD Police Department; (2) official capacity claims against Allen and Malbrough; (3) TCHRA claims against Allen and Malbrough; and (4) the TCHRA hostile work environment claim against

No. 25-40215

## II.

Federal court plaintiffs must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[L]abels and conclusions" are insufficient. *Allstate Indem. Co.*, 164 F.4th at 431 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). So is a "formulaic recitation of the elements of a cause of action." *Id.* (citation modified). Instead, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Of course, we "accept as true" all well-pleaded factual allegations. *Id.*

Although the court ordinarily "must not go outside the pleadings" when reviewing a Rule 12(b)(6) motion, exceptions arise. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Relevant here, the court may consider "documents that are referred to in the plaintiff's complaint" and "central to the plaintiff's claim." *Id.* The district court concluded that both the Facebook post and EEOC charge fit that bill and considered them in resolving the motions to dismiss. Norman wisely does not argue that the district court erred in including these documents in its assessment.

Instead, Norman takes a more nuanced tack. He argues that the district court "selectively and partially interpreted the document's meaning, assessed credibility, [and] drew inferences from its content." As a result, Norman urges, the district court should have converted the motions to dismiss into motions for summary judgment under Federal Rule of Civil Procedure 12(d). Doing so would have opened the door for Norman to

---

BISD. He failed to address these claims in his briefing. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004); *Smith v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594 (5th Cir. 2023).

present additional material. FED. R. CIV. P. 12(d). And in his response to the motions to dismiss, Norman tried to do exactly that. He attached a declaration adding eight pages of new supposed facts. In his view, these allegations provide "essential context" for his claims, and it violated "fundamental fairness" for the district court not to assess them.

The district court did not invade summary judgment territory in assessing the Facebook post. It read the words on the page—Norman's words—and applied the requisite legal standard. It concluded those words, combined with the Amended Complaint's sparse factual allegations, did not plausibly allege speech of public concern protected by the First Amendment. After all, "whether a statement addresses a matter of public concern is a question of law" to be resolved by the court. *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015); *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). We find no error in the district court's treatment of the motion to dismiss, the scope of its review of the Facebook post, or its refusal to assess Norman's extra-complaint declaration. We likewise limit our review to the Facebook post, EEOC charge, and pleadings. *See Scanlan*, 343 F.3d at 536.

## III.

Procedural hurdles cleared, we now assess Norman's § 1983 claims asserting First and Fourteenth Amendment violations. We agree that Norman's Amended Complaint does not state any constitutional violations, so he has failed to overcome the individual Defendants' qualified immunity. The district court properly dismissed Norman's § 1983 claims against those defendants.

## A.

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). The First Amendment guards a public employee's right "in certain

circumstances, to speak as a citizen addressing matters of public concern." *Id.* "Speech involves a matter of public concern if it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Graziosi*, 775 F.3d at 738 (quoting *Connick*, 461 U.S. at 146). In conducting that inquiry, the court evaluates the "content, form, and context of a given statement." *Id.* (citation modified). This balancing requires the court to weigh "context and form 'more heavily.'" *Gibson v. Kilpatrick*, 838 F.3d 476, 487 (5th Cir. 2016) (quoting *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999)).

Content-wise, Norman's statement addressed "integrity and accountability" of supervisors. It addressed leadership practices— "listen[ing] to the ones under [one's] command." Norman suggested his experience, serving his "country and community for years," taught him "how not to run an agency and how not to supervise." Because Norman works for a division of local government, his statement has a flavor of public interest. But it concerns management styles and speaks generally about supervisory roles. When such comments "are only interesting to the public by virtue of the [supervisor's] status as an arm of the government," they "are not a matter of public concern as that legal term of art is properly understood." *Gibson*, 838 F.3d at 485 (citation modified).

Contrast this Facebook post with speech disclosing public corruption or misconduct, which is of public concern. *See Graziosi*, 775 F.3d at 738; *Brawner v. City of Richardson*, 855 F.2d 187, 191–92 (5th Cir. 1988). Norman's words reveal no misconduct, public malfeasance, or corruption. They do no more than inform the public of Norman's general dissatisfaction with supervisors and leadership in his workplace, placing a thumb on the non-public side of the scale. *See Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005) (recognizing opposite principle that when speech goes beyond "inform[ing] the populace" of an employment grievance, "the

content of the speech may be public in nature" (internal quotation marks and citation omitted)); *Moreau v. St. Landry Par. Fire Dist. No. 3*, 808 F. App'x 225, 229 (5th Cir. 2020) (recognizing statement that employer's board "is made up of 'clueless idiots'" is "akin to an internal grievance" and "conveys no information at all other than the fact that a single employee is upset with the status quo" (citation modified)). The content of Norman's Facebook post suggests it is not of public concern.

Form, though, leans the opposite way. Norman's public-facing social media post supports finding public concern.[2] *See Graziosi*, 775 F.3d at 739 (recognizing Facebook post on mayor's page weighed in favor of public concern); *Moreau*, 808 F. App'x at 229. Context, however, weighs against finding public concern. Speech may "relate to the public concern if it is made against the backdrop of public debate." *Salge*, 411 F.3d at 187 (citation modified). Here, there is "nothing to indicate that [Norman's] speech occurred against a backdrop of widespread debate in the community." *Gibson*, 838 F.3d at 487 (citation modified). Norman has not alleged any sort of public conversation surrounding leadership practices, integrity, or accountability within the BISD Police Department or local government. And his Amended Complaint alleges no other potential context for his Facebook statements.

Balancing the factors, we conclude Norman's speech was not imbued with public concern. While the form—social media—suggests public concern, the content and context dictate otherwise. Norman's Facebook post discloses nothing but his general dissatisfaction with leadership in his

---

[2] Norman argues that his speech "takes the form of religious expression" meaning this "sits at the intersection of two fundamental First Amendment values and warrants heightened protection." Norman cites no cases suggesting religious expression—a matter of an individual's conscience—is of public concern by rule.

workplace, and his Amended Complaint provides no context suggesting public debate in the community. We must interpret the alleged facts in the light most favorable to Norman, but we cannot interpret information that is unalleged. Norman has failed to plausibly allege his speech was of public concern, foreclosing his First-Amendment-based § 1983 claim.

## B.

Norman's Amended Complaint made a passing reference to the Fourteenth Amendment, which the district court generously construed as a Due Process claim. True, "discharge from public employment under circumstances that put the employee's reputation, honor, or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 419 (5th Cir. 2018) (citation modified). To determine whether "§ 1983 affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear his name," the court uses a "stigma-plus-infringement test," requiring a plaintiff to show:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Id.* (quoting *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006)).

Norman avers that he satisfied these elements. But he cites no allegations from his Amended Complaint, relying instead on sections from BISD's summary judgment motion, BISD's summary judgment reply brief, and summary judgment evidence. As established, the district court could not consider materials beyond the four corners of the Amended

Complaint, and the narrow exceptions it applied.  *See Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024).  Nor can we.

To be sure, Norman's Amended Complaint alleges his discharge. And he alleges—in largely conclusory fashion—that false claims were made against him by his supervisor.  But, as Norman conceded, he did "not explicitly allege that he requested a name-clearing hearing or that such a request was denied."  While Norman need not "use the term 'name-clearing hearing' to satisfy the sixth element," he must "still petition the employer in a manner that can be construed as asking for an opportunity to clear his name."  *Bledsoe*, 449 F.3d at 653.  Norman's admitted failure to plead these elements is fatal to his afterthought of a Fourteenth Amendment claim.  *See Ristow v. Hansen*, 719 F. App'x 359, 366 (5th Cir. 2018).

Norman asserts on appeal a new due process claim.  He argues he had a property interest in his position with the BISD Police Department because "employer policies [may] create a legitimate expectation of continued employment."  He invokes policies—included in the summary judgment evidence—and suggests he was deprived of required procedures during his termination proceedings.  Norman's latest attempt to move the target fails. He did not assert this claim in his Amended Complaint.  We will not offer Norman a third shot at a procedural due process claim in the form of this appeal.  *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316–17 (5th Cir. 2000).

Norman failed to plausibly allege a Fourteenth-Amendment-based § 1983 claim.

## IV.

Norman asserts his § 1983 claims against BISD as well.  But absent allegations of an underlying constitutional violation, there is no liability to impute to BISD under *Monell v. Department of Social Services*, 436 U.S. 658

(1978). *Loftin v. City of Prentiss*, 33 F.4th 774, 783 (5th Cir. 2022). The district court properly dismissed Norman's § 1983 municipal liability claims.

## V.

Norman's TCHRA claims fare no better than his § 1983 claims. Title 21 of the Texas Labor Code functionally codifies Title VII in Texas. *See* TEX. LAB. CODE § 21.001(1). Texas looks to "relevant federal law for guidance when the relevant provisions of Title VII are analogous." *S.A. Water Sys. v. Nicholas*, 461 S.W.3d 131, 136–37 (Tex. 2015). We rely on both Texas and federal case law in assessing Norman's claims.

## A.

An employer is liable under the TCHRA when it "retaliates or discriminates against a person" for the protected activities of (1) opposing a discriminatory practice; (2) making a charge; (3) filing a complaint; or (4) testifying or participating in an investigation, proceeding, or hearing. TEX. LAB. CODE § 21.055. Consistent with our jurisprudence on Title VII retaliation claims, Norman must allege: "(1) he was engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and adverse employment action." *Norsworthy v. Hou. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (citation modified).

On appeal, Norman identifies two protected activities. First, his religious expression in the form of a Facebook "prayer." And, second, his filing of an EEOC charge. The first is not protected for purposes of the TCHRA's retaliation provision, and the second did not allegedly cause any adverse employment action.

Take the religious expression argument first. Norman asserts that his religious "expression itself constitutes the protected activity" for which he

suffered retaliation. But the TCHRA concerns retaliation related to an underlying claim of discrimination—protecting whistleblowers. *S.A. Water Sys.*, 461 S.W.3d at 137. Norman's Facebook post, whether religious expression or not, does not identify any discriminatory practice by BISD or the BISD Police Department. Such activity does not qualify as "protected activity" under this TCHRA provision. *See id.* (identifying four items in § 21.055 as "protected activity" for purposes of retaliation claim); *S.W. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 403 (Tex. App.–El Paso 2018, no pet.) ("Retaliation is a distinct theory of liability that is not encompassed by other theories of discrimination.").

Consider, next, the EEOC charge. Norman is correct that filing a charge of discrimination is a protected activity. *See* Tex. Lab. Code § 21.055. As the district court emphasized, though, Norman filed his EEOC charge well after his termination. There is no "causal connection" between Norman's protected activity and his termination.[3] *See Norsworthy*, 70 F.4th at 336; *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022).

Recognizing this problem, Norman argues—in short course and for the first time on appeal—that his EEOC charge preceded "final resolution of his employment relationship through the grievance process" and "post-termination adverse actions, including negative references, blacklisting, or interference with subsequent employment." For one, these arguments are waived. *See Morris v. Town of Independence*, 827 F.3d 396, 403 & n.27 (5th Cir. 2016); *Moore v. Huse*, 578 F. App'x 334, 340 (5th Cir. 2014); *United*

---

[3] The district court also rejected the idea that Norman's EEOC charge caused an adverse employment action in the form of BISD terminating other employees who witnessed retaliatory actions against Norman. Norman has waived any challenge to this conclusion on appeal. *See Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008).

*States v. Green*, 964 F.2d 365, 371 (5th Cir. 1992). For another, Norman's Amended Complaint contains no such supporting allegations. We reject yet another retroactive attempt to reframe the case on appeal.

Norman failed to allege a plausible retaliation claim under the TCHRA. *See* Tex. Lab. Code § 21.055.

### B.

Employers violate the TCHRA, in relevant part, when they "discharge[] an individual" because of their religion. Tex. Lab. Code § 21.051. In this procedural posture, Norman need only allege facts supporting the "ultimate elements" of his disparate treatment claim. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation modified). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim" on a motion to dismiss: "(1) an adverse employment action, (2) taken against a plaintiff because of his protected status." *Id.* at 767 (citation modified); *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 418 (5th Cir. 2023). Norman failed to plead those ultimate elements.[4]

Discriminatory motive may be ultimately shown by either direct or circumstantial evidence. *Cicalese*, 924 F.3d at 766. So, Norman must allege direct evidence of discrimination—"facts that would suggest [BISD's]

---

[4] The district court dismissed Norman's disparate-treatment-based TCHRA claim because Norman failed to allege he was treated differently than similarly situated nonreligious employees, a required element to state a prima facie case under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). A "district court errs by requiring a showing of each prong of the prima facie test for disparate treatment," because the *McDonnell Douglas* framework is an evidentiary rule, not a pleading requirement. *Cicalese*, 924 F.3d at 766 (citation modified). But Norman has not carried his burden even under the correct standard.

actions were based on [Norman's religion]." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citation modified).  Or he can allege circumstantial evidence of discrimination—"that [BISD] treated similarly situated employees . . . more favorably." *Id.*  In that situation, it can be "helpful to reference [the *McDonnell Douglas*] framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Cicalese*, 924 F.3d at 767 (citation modified); *Univ. of Tex. at El Paso v. Esparza*, 510 S.W.3d 147, 157 (Tex. App.–El Paso 2016, no pet.).

Norman has failed to plead facts supporting the "ultimate elements" of his claim under either approach.  Norman's Amended Complaint alleges he was discriminated against after posting a Facebook prayer and concludes that "a motivating factor for his termination was his religious statement." Am. Compl. ¶ 23.  Those threadbare allegations do not allege direct evidence of discrimination.  *See Cicalese*, 924 F.3d at 764, 768 (concluding plaintiffs had plausibly alleged disparate treatment based on "anti-Italian bias" where supervisors told plaintiffs they should "go back to Italy").  Norman also has not alleged a plausible disparate treatment claim based on circumstantial evidence.  *See Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021).  He claims that he "alleged that other officers who posted on social media without religious content were not disciplined."  But his only support for that supposed allegation comes from a conclusory recitation of this element in his Amended Complaint and the district court's order explaining that he failed to allege such facts.

At bottom, Norman's "complaint and speculation did not allege any facts, direct or circumstantial, that would suggest [BISD's] actions were based on" Norman's religion "or that [BISD] treated similarly situated employees of other [religions] more favorably." *Raj*, 714 F.3d at 331.  We affirm the dismissal of Norman's TCHRA disparate treatment claim.

## VI.

"[A]lmost as an afterthought," Norman "tacked on a general curative amendment request to the end of [his] response in opposition to the defendants' motion[s] to dismiss." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). He does the same before our court—including a single sentence at the end of his brief asking the court to remand so he can replead his claims.

The "district court gave no reason for dismissing [Norman's] claim[s] with prejudice" and denying leave to amend. *Jack v. Evonik Corp.*, 79 F.4th 547, 565 (5th Cir. 2023). We can "still affirm if there is a justifying reason appearing in the record." *Id.* (internal quotation marks and citation omitted); *see also Marucci Sports L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Here, a one sentence argument is not enough to find the district court abused its discretion. *Cf. Castille v. Port Arthur ISD*, 168 F.4th 240, 257 (5th Cir. 2026). Norman provides no reason why the district court's implicit denial of leave to amend was erroneous. *See Bernegger v. Dep't of Rev.*, 785 F. App'x 209, 211 n.1 (5th Cir. 2019); *Phan v. Aurora Med. Ctr. of Colo. for Buchanan*, No. 23-20343, 2024 WL 890125, at *1 (5th Cir. Mar. 1, 2024).

We recognize that Norman identified new allegations and summary judgment evidence in his response to the motions to dismiss and in his appellate brief. But he maintained, consistently, that the allegations in his Amended Complaint already satisfied the plausibility standard. Norman has counsel, who should have been aware of the deficiencies in the Amended Complaint after Defendants moved to dismiss. *See Goldstein*, 340 F.3d at 255.

Moreover, qualified immunity is designed to shield public officials from the burdens of drawn-out litigation, not just from liability. *See Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986). Norman has tried to change

his claims time and again without following the proper procedure. Allowing a represented party like Norman a *third* try to plausibly plead his case undercuts that purpose. *See id.* at 792. That is so, particularly after significant motion practice, discovery, and appellate briefing have taken place and while Norman has affirmed that his Amended Complaint already sufficed. Under the circumstances, we conclude the district court did not abuse its discretion in declining leave to amend and dismissing Norman's claims with prejudice.

AFFIRMED.